# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES, <br><br> v. <br><br> RONDALE MONTREL FAULKNER, <br><br> *Defendant.* | CASE NO. 3:17-cr-00011 <br><br> MEMORANDUM OPINION AND ORDER <br><br> JUDGE NORMAN K. MOON |

Rondale Montrel Faulkner filed a Motion to Vacate and Set Aside Judgment of Conviction and Sentence under 28 U.S.C. § 2255. Dkt. 188. In 2018, Faulkner entered a plea agreement in which he pleaded guilty to 1) Conspiracy to Distribute and Possess with Intent to Distribute 100 Grams or More of Heroin and 2) Possessing a Firearm After Having Been Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year. Dkt. 124 at 1. He was sentenced to 108 months' imprisonment on each count, to be served concurrently, and four years of supervised release. Dkt. 169 at 2–3. He now seeks both appointment of counsel and relief from that sentence, arguing that it should be vacated based on two Supreme Court decisions in the intervening years: *New York Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) and *Rehaif v. United States*, 139 S. Ct. 2191 (2019). The Government opposes his motion. Dkt. 203.

For the reasons set forth below, the Court concludes that Faulkner has failed to show an entitlement to relief under § 2255, and so the Court will deny his Motion to Vacate. Dkt. 188.

1

## Background

The offense conduct facts in this section are drawn from the Presentence Report. Dkt. 171. In August 2016, the Blue Ridge Narcotics and Gang Task Force began investigating the distribution of heroin around Culpeper, Virginia. *Id.* ¶ 27. The investigation came to focus on a conspiracy by Rondale Montrel Faulkner and five others: David Lee Boyce, April Christine Sherman, George Christopher Faulkner, David Allen Frazier, Jr., and Rebecca Rae Backe. *Id.*

On October 23, 2016, an undercover agent purchased 20 capsules of heroin from April Sherman and Dave Frazier, Jr., in Culpeper. *Id.* ¶ 28. Law enforcement stopped Frazier and Sherman's vehicle minutes after the transaction and seized 21.28 grams of heroin, 0.28 grams of methamphetamine, 0.1 grams of cocaine, and an automatic pistol. *Id.* ¶ 29.

In January 2017, a confidential informant made five purchases from Rondale Faulkner: four of suspected heroin and one of a firearm. *Id.* ¶¶ 30–34. Testing revealed that of the four substances purchased, three contained heroin and acetyl fentanyl: 1.17 grams, 1.71 grams, and 3.35 grams, for a total of 6.23 grams. *Id.* ¶¶ 30–33. George Faulkner, Rondale's brother, was also present for the purchase on January 6, 2017, and drove the vehicle in which the transaction took place. *Id.* ¶ 31. In the final purchase, on January 31, 2017, Rondale Faulkner sold the confidential informant a loaded revolver that had traveled in interstate or foreign commerce. *Id.* ¶ 34.

In the span of February-March 2017, the confidential informant made five more purchases from co-conspirators Boyce and Backe. *Id.* ¶¶ 37–40. Lab tests indicated that four out of the five purchased substances were heroin; the last was carfentanil. *Id.*

In a November 6, 2017, interview with the Culpeper Police Department, Frazier stated that he had told Rondale Faulkner that Sherman was selling heroin in Culpeper and undercutting the prices charged by the Faulkner brothers. *Id.* ¶ 44. He stated that the Faulkners met Sherman,

took her to a secluded area and stripped her due to their suspicion that she was wearing a wire or recorder, and told her that in the Culpeper area, she could only sell heroin to them. *Id.*

In an interview with the Culpeper Police Department on November 28, 2017, Sherman stated that she met the Faulkners in September 2016 and in the following weeks sold Rondale Faulkner three 8-balls of heroin. *Id.* at ¶ 45. On two occasions she accepted guns from Rondale Faulkner as payment for drugs. *Id.*

On August 23, 2017, a grand jury brought a 17-count indictment against the members of the conspiracy, naming Rondale Faulkner on seven counts: Dkt. 3 at 1, 3–6. He was charged with one count of conspiracy to distribute at least 100 grams of a substance containing a detectable amount of heroin; three counts of distributing a substance containing a detectable amount of heroin and fentanyl; one count of attempting to distribute a substance containing heroin and fentanyl; one count of possessing a firearm in furtherance of a drug crime; and one count of possessing a firearm after having been convicted of a felony. *Id.* Rondale Faulkner was arrested on September 12, 2017. Dkt. 53.

On January 8, 2018, Rondale Faulkner entered a Rule 11(c)(1)(c) plea agreement. Dkt. 124. He pled guilty to conspiracy to distribute 100 or more grams of a substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), and to possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. §922(g)(1). *Id.* at 1–2.

Faulkner initialed every page of the written plea agreement and signed it. Dkt. 124. In the agreement, he acknowledged that he had "consulted with [his] attorney and fully [understood] his rights" and that he had "read [the] plea agreement and carefully reviewed every part of it with [his] attorney" and "voluntarily agreed to it." *Id.* at 13. He also acknowledged that he was

"pleading guilty . . . because [he was] in fact guilty and because [he believed] it [was] in [his] best interest to do so and not because of any threats or promises." *Id.* at 2. He stipulated that "there [was] a sufficient factual basis to support each and every material factual allegation contained within the charging document(s) to which [he was] pleading guilty." *Id.* at 12. He also agreed to waive his right to appeal and collaterally attack the judgment unless such an attack was based on ineffective assistance of counsel.[1]

At the start of his plea hearing, Faulkner was sworn under oath. Dkt. 196 at 2. The Court then conducted a Rule 11 plea colloquy and found that Faulkner was competent to plead guilty. *Id.* at 3. The Court asked Faulkner if he had "ample time to consult [his] attorney," to which he responded "Yes, sir." *Id.* The Court also asked Faulkner if he was "fully satisfied with the counsel representation and advice given to [him] in this case by [his] attorney," to which he responded, "Yes, sir." *Id.* at 4. During the hearing, Faulkner affirmed that he read and understood the plea agreement prior to signing it. *Id.* at 10. The Court asked him if, other than the plea agreement, anyone had made him any promises, assurances, or attempted to force him to plead guilty, to which he responded "No, sir." *Id.* He also acknowledged that he was voluntarily

---

[1] The plea agreement provides in relevant part that:

I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel, and agree I will not file any document which seeks to disturb any such order, unless such filing is based on ineffective assistance of counsel. **I agree and understand that if I file any court document (except for an appeal based on an issue not otherwise waived in this agreement; an appeal based on an issue that cannot be waived, by law; or a collateral attack based on ineffective assistance of counsel) seeking to disturb, in any way, any order imposed in my case, such action shall constitute a failure to comply with a provision of this agreement.**

Dkt. 124 at 8 (emphasis in original).

waiving his right to appeal the guilty verdict and sentence and his right to collaterally attack the judgment. *Id.* at 11.

During the hearing, the Government delivered the factual basis for Faulkner's plea by summarizing the evidence it would have offered at trial. *Id.* at 11–15. Faulkner's counsel stated that "for purposes of our plea, we're admitting that the defendant was part of a conspiracy to distribute more than 100 grams of heroin, and that he was a felon in possession of a firearm on January 31, 2017." *Id.* at 15. The Court asked Faulkner how he wished to plead to the charges. *Id*. He responded "Guilty." *Id.* The Court then found that Faulkner was "fully competent and capable of entering an informed plea [and] that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." *Id.*

At the sentencing hearing on April 30, 2018, the Court asked whether Faulkner and his attorney had an opportunity to review the Presentence Investigation Report ("PSR"), Dkt. 181 at 2. Faulkner responded "Yes, sir," and his counsel added that the only issue with the PSR was that his client requested the addition of two half-siblings to the list of family members. *Id.* at 2–3.

The Government and Faulkner's counsel both urged the Court to accept the Rule 11(c)(1)(C) plea agreement, which contained a stipulated sentence of 108 months. *Id.* at 4–6. After offering Faulkner an opportunity to speak, which he declined, the Court imposed the requested 108-month sentence of imprisonment, to be followed by four years of supervised release. *Id.* at 6–7.

## **Legal Standard**

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that

"the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Faulkner bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965). In deciding a § 2255 motion, the Court need not hold a hearing if "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

### **Faulkner's Section 2255 Motion**

Faulkner filed a *pro se* Motion to Vacate and Set Aside Judgment of Conviction and Sentence under 28 U.S.C. § 2255. Dkt. 188. He seeks relief based on plain error and requests appointment of counsel. *Id.* at 2.

Faulkner argues that the Supreme Court's decision in *New York Rifle & Pistol Association v. Bruen* renders unconstitutional his conviction under the felon-in-possession statute, 18 U.S.C. § 922(g)(1). 142 S. Ct. 2111 (2022). *Id.* at 6–7. He argues that his petition is timely, despite the general one-year statute of limitations of 28 U.S.C. § 2255(f), because *Bruen* recognized and made retroactive a new constitutional right. Dkt. 191 at 2.

Faulkner also argues that the indictment in his case was invalid and should be dismissed because it fails to describe how he knowingly possessed a firearm as a felon or explain how the firearm he possessed was in or affected commerce. Dkt. 188. at 7–9. He cites the Supreme Court's decision in *Rehaif v. United States* for the principle that a defendant's knowledge of his status as a felon is a required element of a §922(g) offense. 139 S. Ct. 2191 (2019). *Id.* at 8.

In response, the Government filed a Motion to Dismiss. Dkt. 203. The Government argues that Faulkner's Section 2255 motion should be dismissed on five different grounds: that it is untimely; that he waived his right to collaterally attack his conviction; that his claims are

6

procedurally defaulted; that he states no ground upon which relief can be granted; and that in light of the equally and more serious charges dismissed by the United States as part of Faulkner's plea deal, his plea and sentence should not be disturbed. Because it concludes that there are multiple sufficient barriers to Faulkner's petition, the Court will deny Faulkner's motion.

## Analysis

### A. *Bruen* does not create a new statute of limitations for Faulkner's petition

The one-year statute of limitations for motions under § 2255 runs

> "from the latest of—
> (1) the date on which the judgment of conviction becomes final;
> [...]
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; [...]

28 U.S.C. § 2255(f).

Faulkner argues that his petition should be considered timely under § 2255(f)(3) because he filed it on February 2, 2023, less than one year after the Supreme Court delivered its opinion in *Bruen* on June 23, 2022. Dkt. 191 at 2. *Bruen* established that ordinary, law-abiding citizens have the right carry a handgun for self-defense outside the home without a showing of special need. 142 S. Ct. at 2122. However, the Court does not find that *Bruen* has any impact on Faulkner's felon in possession conviction under 18 U.S.C. §922(g)(1).

*Bruen* established that courts must engage in historical analysis to determine whether a challenged firearm "regulation is consistent with this Nation's historical tradition of firearm regulation;[]" inconsistent regulations cannot be upheld. *Id*. at 2126. More specifically, *Bruen* held that New York State's gun-licensing regime was unconstitutional because its requirement that applicants show "proper cause" to a state official in order to legally carry a handgun in

public "violate[d] the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id*. at 2156. The Supreme Court stated that "nothing in our analysis should be interpreted to suggest the unconstitutionality" of gun-licensing regimes which, rather than requiring a showing of special need, merely ensure that the licensees are in fact law-abiding and responsible citizens. *Id.* at 2138, fn. 9.

Section 922(g)'s ban on firearm possession by convicted felons is a close corollary to a licensing regime which ensures that the person seeking to purchase a gun is law-abiding.

In addition, Justice Kavanaugh's concurrence noted that the Second Amendment allows a variety of gun regulations, stating that "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id.* at 2162.

While the Court is "not bound by dicta or separate opinions of the Supreme Court[,]" *Myers v. Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 406 (4th Cir. 2005), it should "give great weight to Supreme Court dicta," *N.L.R.B. v. Bluefield Hosp. Co., LLC*, 821 F.3d 534, 541 n.6 (4th Cir. 2016). The Court "cannot simply override a legal pronouncement endorsed by a majority of the Supreme Court, particularly when the supposed dicta is recent and not enfeebled by later statements." *Hengle v. Treppa*, 19 F.4th 324, 347 (4th Cir. 2021) (internal quotation marks and alterations omitted).

For these reasons, the Court concludes that *Bruen* did not trigger a new one-year period in which Faulkner could bring suit under § 2255(f)(3), and his petition is time-barred.

The Fourth Circuit has yet to rule on the question of post-*Bruen* application of Section 922(g) to nonviolent felons. However, in concluding that *Bruen* did not recognize rights that impact Faulkner, the Court joins the consensus of courts who have considered similar petitions.

8

*See U.S. v. Robinson-Davis*, No. 7:22-CR-00045, 2023 WL 2495805, at *2 (W.D. Va. Mar. 14, 2023) ("[T]hese *Bruen* challenges to the felon-in-possession statute—whether facial attacks or as-applied—have, to date, been uniformly and soundly rejected. Indeed, as of March 14, 2023, at least one circuit court—the Seventh Circuit in *United States v. Gonzalez*, No.22-1242, 2022 WL 4376074 (7th Cir. Sept. 22, 2022)—and, by the government's count, over 100 district courts have held that the federal law prohibiting felons from possessing firearms remains valid even after *Bruen*.) (collecting cases); *see also U.S. v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023)("The longstanding prohibition on possession of firearms by felons is constitutional"); *but see Range v. Atty. Gen. U.S. of Am.*, 69 F.4th 96, 106 (3d Cir. 2023) (holding that prohibition on possession of a firearm by a felon was unconstitutional as applied to a man convicted of making a false statement to obtain food stamp assistance).

### B. Faulkner's arguments based on *Rehaif* fail because they are time-barred and fail to show prejudice

Faulkner also makes arguments based on *Rehaif v. United States*, decided by the Supreme Court in 2019. 139 S. Ct. 2191 (2019). Dkt. 188 at 5–8. Faulkner does not indicate how his petition, filed in 2023, could be timely based on *Rehaif* given the one-year statute of limitations for actions based on newly announced rights. 28 U.S.C. § 2255(f). In addition to being time-barred, his *Rehaif* argument is unsuccessful based on procedural default and its merits.

"In felon-in-possession cases after *Rehaif*, the Government must prove not only that the defendant knew he possessed a firearm, but also that *he knew he was a felon* when he possessed the firearm." *Greer v. United States*, 141 S. Ct. 2090, 2095 (2021) (emphasis original). Based on this development, Faulkner argues that the indictment in his case has "fatal flaws" because it "fails to describe how he 'knowingly possessed['] a firearm and fails to explain how he

9

possessed in and/or affected commerce." *Id.* at 8–9. (The indictment reflected the elements of the offense at the time: that Faulkner, having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowing possess a firearm that had been shipped or transported in interstate commerce. Dkt. 3 at 6.)

However, the record in this case reflects no efforts by Faulkner to appeal his conviction, and his assertions based on *Rehaif* do not meet the requirements that he would have to meet to raise them for the first time on collateral attack.

> In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. *See United States v. Frady*, 456 U.S. 152 (1982); *United States v. Maybeck*, 23 F.3d 888, 891-92 (4th Cir. 1994). The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence. *See id.* at 496, 106 S. Ct. 2639.

*United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999).

In order for the Court to entertain the *Rehaif* argument, Faulkner would have to show actual prejudice from the error, or that he was actually innocent of the charge.[2] But although Faulkner contends that the indictment in his case was "defective" he provides no information or argument about how the indictment prejudiced him. Dkt. 188 at 8. He does not, for instance, argue that he was in fact innocent or ignorant of his status as a felon,[3] or that he would have

---

[2] The Court notes that "defects in an indictment do not deprive a court of its power to adjudicate a case[.]" *United States v. Cotton*, 535 U.S. 625, 630 (2002).

[3] The record of this case fails to offer Faulkner grounds for a convincing argument based on ignorance; in 2011, well before the offense that gave rise to this case, Faulkner was convicted of being a non-violent felon in possession of a gun in the Circuit Court of Culpeper, Virginia. Dkt. 171 at 18. This record would undermine an argument that he did not know of his status, since "[a]s many courts have recognized and as common sense suggests, individuals who are

10

altered his plea if he had known that the Government was obligated to prove the knowledge element.

Faulkner instead relies on the Ninth Circuit's holding in *United States v. Du Bo*, in which the court dismissed an indictment that missed an essential element without inquiry as to whether the error prejudiced the defendant. 186 F.3d 1177 (9th Cir. 1999). However, *Du Bo* is inapplicable, as its holding is specifically confined to indictments "properly challenged prior to trial." *Id.* at 1179. There is no corresponding pretrial challenge in this case. Moreover, applying *Du Bo* in the manner Faulkner argues for would run counter to the Supreme Court's holding in *Greer*—which limited the availability of relief on appeal based on *Rehaif* to defendants who could make a showing of prejudice. 141 S. Ct. at 2100 ("In felon-in-possession cases, a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon.")

For these reasons, the Court finds that Faulkner's *Rehaif* arguments establish no grounds for relief under § 2255.

### C. Effect of Collateral Attack Waiver

A "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403

---

convicted felons ordinarily know that they are convicted felons." *Greer*, 141 S. Ct. at 2095. This notice of status by way of conviction seems particularly forceful in Faulkner's case, given that he had convictions both of felonies *and* of being a felon in possession of a gun.

F.3d 216, 220 (4th Cir. 2005).[4] In the absence of extraordinary circumstances, a properly conducted Rule 11 colloquy establishes the validity of the waiver. *Id.* at 221. A waiver remains valid even "in light of a subsequent change in the law." *Id.* at 529 (citing *United States v. Blick*, 408 F.3d 162 (4th Cir.2005)). However, a waiver is not enforceable if enforcement would result in a miscarriage of justice. *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016) (citing *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir.2005)). "A proper showing of 'actual innocence' is sufficient to satisfy the 'miscarriage of justice' requirement." *Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir.2009) (explaining the meaning of "miscarriage of justice" in the context of procedural default).

In his plea agreement, Faulkner waived the right to appeal and to collaterally attack his sentence. Dkt. 124 at 7–8. As discussed above, Faulkner does not offer any argument that he was actually innocent. He also does not argue that the Rule 11 colloquy was defective. The Court has reviewed the transcript of Faulkner's January 8, 2018 plea hearing, at which it found that Faulkner was "fully competent and capable of entering an informed plea" and that he entered "a knowing and voluntary plea supported by an independent basis in fact." Dkt. 196 at 15. The Court finds no deficiency in the hearing.

Given the sufficiency of the Rule 11 hearing and that there is no miscarriage of justice in enforcing the waiver, the Court finds that Faulkner's 2255 petition is barred by his waiver of the right to collaterally attack his sentence.

---

[4] In *Lemaster*, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." *Id*. at n. 2. For that reason this analysis draws on discussion of both waiver types.

**Conclusion**

Because Faulkner has not presented feasible grounds for relief under § 2255, the Court concludes that appointing counsel would be fruitless. Faulkner's Motion to Vacate and request for appointment of counsel, Dkt. 188, is **DENIED**.

The Clerk of Court is directed to send this Memorandum Opinion and Order to Rondale Faulkner and all counsel of record.

Entered this 14th day of December, 2023.

                                        _____
                                        NORMAN K. MOON
                                        SENIOR UNITED STATES DISTRICT JUDGE